## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| David Fearn and Christina Hemker, individually and on behalf of those similarly situated and the Proposed Minnesota Rule 23 Class, | Civil No. 11-743 DSD/TNL |
| Plaintiffs,<br>v. | **REPORT &**<br>**RECOMMENDATION** |
| Blazin' Beier Ranch, Inc. d/b/a Whiskey Creek Wood Fire Grill, Lisa Tonjum, and Jessica Beier-Prescher,<br><br>Defendants. | |

Anna P. Prakash and Steven Andrew Smith, Nichols Kaster, PLLP, 80 South Eighth Street, Suite 4600, Minneapolis, MN 55402-2242 (for Plaintiffs);

Sara Gullickson McGrane and Grant T. Collins, Felhaber Larson Fenlon & Vogt, PA, 220 South Sixth Street, Suite 2200, Minneapolis, MN 55402-4504 (for Defendants).

The above-captioned matter came before the undersigned United States Magistrate Judge, on the parties' Joint Motion for Preliminary Settlement Approval (Docket No. 29). The matter has been referred to the undersigned for report and recommendation to the Honorable David S. Doty, United States District Court Judge, under 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1. (*See* Docket No. 35.)

The parties appeared before the undersigned for a preliminary settlement approval hearing on November 30, 2011. (Docket No. 37.) Anna P. Prakash appeared on behalf of Plaintiffs and Sara Gullickson McGrane appeared on behalf of Defendants. (Docket

No. 37.)  At the hearing, the parties agreed to submit the issue of preliminary settlement approval to the Court on the papers.

## I.

### A. Background

Plaintiffs David Fearn and Christina Hemker are former servers of the Whiskey Creek Wood Fire Grill restaurant located in Rochester, Minnesota.  (Docket No. 1, ¶¶ 1-7.)  Plaintiffs bring this action, on behalf of themselves and those similarly situated, for unlawful tip pooling, deductions, and wage-payment practices under the Minnesota Fair Labor Standards Act ("MFLSA"), Minn. Stat. § 177.21 *et seq.*, and violations of the federal minimum wage under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206 *et seq.*, against Defendants Blazin' Beier Ranch, Inc. d/b/a Whiskey Creek Wood Fire Grill, Lisa Tonjum, and Jessica Beier-Prescher.  (Docket Nos. 1, ¶¶ 6-7, 59-113; 29 at 3.)

In this case, the presence of both state and federal claims results in two potential classes: an opt-out, Rule 23 class for the MFLSA claims under Fed. R. Civ. P. 23(b)(3), and an opt-in, consent FLSA collective under 29 U.S.C. § 216(b) for the federal claims.

### B. Settlement

On August 3, 2011, the parties attended a court-ordered settlement conference before the undersigned.  (Docket No. 21.)  During the settlement conference, the parties reached a settlement in the amount of $83,000.  (Docket No. 30 at 7.)  Following the conference, a dispute arose between the parties concerning the payment of payroll taxes.  (Docket No. 30 at 7.)  The parties were able to resolve this dispute by "arriving at a

reduced settlement of $81,000 with the understanding that the Defendants would then pay all employer-side payroll taxes in addition to the $81,000." (Docket No. 30 at 7.)

### C. Joint Motion

The parties now jointly move this Court for (1) certification of the proposed class and preliminary certification of the proposed collective; (2) certification of Plaintiffs Fearn and Hemker as class representatives; (3) appointment of Plaintiffs' counsel as class counsel; (4) appointment of the firm representing Plaintiffs as settlement administrator; (5) preliminary approval of the settlement; and (6) preliminary approval of the Notice of Settlement. (*See* Docket No. 30 at 2.) The details of the parties' proposal follow.

For the FLSA class, the parties propose a collective defined as follows:

> All Servers who were employed by Defendants at the Whiskey Creek restaurant located in Rochester, MN at any time from March 28, 2008 to May 28, 2011 and who submit a valid Consent Form and the form is received within 50 days of the date Notice is mailed.

(Docket No. 30 at 8.) As for the Rule 23 class, the parties propose the following definition:

> All Servers who were employed by Defendants at the Whiskey Creek restaurant located in Rochester, MN at any time from March 28, 2008 to May 28, 2011.

(Docket No. 30 at 8.) The Court refers to the members of the FLSA collective and Rule 23 class jointly as the "Class Members."

The settlement funds will be used to (1) compensate Class Members who do not exclude themselves from the settlement; (2) pay the attorneys' fees and litigation costs of

Plaintiffs' counsel; (3) and provide class-representative incentive awards to the named plaintiffs.  (Docket No. 30 at 8-9.)  As for distribution of the settlement funds,

> [t]he Parties agree that Class Members' shares of the Settlement Fund will be distributed on a *pro rata* basis between all Class Members who do not opt-out of the settlement (hereinafter "Participating Class Members"), based on the amount each Participating Class Member contributed to the tip pool during the period from March 28, 2008 to May 28, 2011.  Class Members who do not send back a Consent Form to join the FLSA portion of the litigation shall have their *pro rata* distribution weighted at ninety percent (90%).

(Docket No. 30 at 9 (footnote omitted).)   Allocation of the individual payments to Participating Class Members will occur as follows:

> (1) fifty percent (50%) of the total payment to each Participating Class Member shall be allocated to wage claims and will be reported to taxing authorities on Forms W-2; [and] (2) fifty percent (50%) of the total payment to each Participating Class Member will be allocated to all non-wage claims, including liquidated damages, interest and other applicable penalties payable to the Participating Class Member under federal and state law and will be reported to taxing authorities on Form 1099.

(Docket No. 30 at 9-10.)  Further, "Defendants will be responsible for calculating and paying the employer's share of payroll taxes on all settlement amounts subject to payroll taxation.  Such employer payroll tax payments will not be deducted from the settlement fund."  (Docket No. 30 at 10 (citation omitted).)   Finally, "[a]ny checks remaining uncashed after ninety (90) days of when the checks are mailed, will be donated to the Parties' agreed upon *cy pres* recipient, the Volunteer Lawyers Network . . . . "  (Docket No. 30 at 10.)

4

Plaintiffs' counsel will function as the settlement administrator, receiving consent forms and mailing checks.  (Docket No. 30 at 10.)  In order to notify Class Members of the settlement and their individual rights, Plaintiff's counsel will distribute a notice via First-Class, regular United States mail to the most current mailing address information available for each Class Member from parties' records.  (Docket No. 30 at 10.)  The notice will inform each Class Member:

(1) Unless the Class Member sends Plaintiffs' counsel a signed request for exclusion in time for the request to be received within 50 days from the mailing of the notice, the Class Member will release Defendants from all MFLSA claims asserted in this lawsuit;

(2) In order to receive a non-weighted *pro rata* portion of settlement and release the FLSA claims asserted in this lawsuit, the Class Member must return a signed consent form to Plaintiffs' counsel and the form must be received within 50 days from the mailing of the notice;

(3) How to exclude the Class Member from the MFLSA portion of the settlement and will explain the procedures for opting into the FLSA portion of the settlement; and

(4) Even if a Class Member does not exclude himself or herself from the Class, the Class Member may send in an objection explaining why he or she disagrees with the settlement or a written notice of his or her intent to appear and speak to the Court about the settlement at the Final Fairness Hearing.

(Docket No. 30 at 10-11.)  Enclosed with the parties' moving papers was a proposed notice to the Class Members.  (Docket No. 36 at 28-37.)

### D. Preliminary Settlement Approval Hearing & Proposed Notice

At the preliminary settlement approval hearing, the Court reviewed the parties' proposed notice.  *See* Fed. R. Civ. P. 23(e)(1) ("The Court must direct notice in a reasonable manner to all class members who would be bound by the proposal."); *Petrovic*

*v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) (notice to class must be reasonably calculated to apprise interested parties of the action, provide an opportunity for objection, and "be structured in a manner that enables class members rationally to decide whether they should intervene in the settlement proceedings or otherwise make their views known" (quotation omitted)).  The Court's review was guided in part by the Federal Judicial Center's *Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide 2010*, *available at* http://www.fjc.gov/public/pdf.nsf/lookup/notcheck.pdf/$file/notcheck.pdf.   The Court directed Plaintiffs' counsel, with input from Defendants' counsel, to submit a revised notice encompassing the following changes: increase the size of and apply boldface to the notice's heading; include Plaintiffs' counsel's contact information at the top of the first page of the notice; separate the MFLSA and FLSA claims into two distinct paragraphs; apply boldface to the FLSA collective definition and underscore the 50-day response period; and modify the "Effect of Choosing the Option" section of the table summarizing the rights of a Class Member so as to breakdown the resultant effects into individual bullet points.  (*See* Docket No. 37.)  The Court also directed Plaintiffs' counsel to submit an affidavit concerning fees and costs incurred to date in this matter.  (*See* Docket No. 37.)  The revised notice and affidavit were filed with the Court on November 30, 2011. (Docket Nos. 38-39.)

## II.

### A.  Certification of MFLSA Rule 23 Class

The parties move for certification of the MFLSA Class Members under Fed. R. Civ. P. 23 (Docket No. 30 at 12-20.)  The determination of whether to certify a proposed class under Fed. R. Civ. P. 23 lies within the discretion of the district court.  *Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011); *In re Select Comfort Corp. Sec. Litig.*, No. 99-884 (DSD/JMM), 202 F.R.D. 598, 603 (D. Minn. Sept. 4, 2001) (*Select Comfort*). Rule 23

> requires a two step analysis to determine whether a class is appropriate.   First, plaintiffs must satisfy the four prerequisites in Fed. R. Civ. P. 23(a) by demonstrating that: (1) the class is so numerous that joinder of all members is impractical (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interest of the class (adequate representation).   Second, the action must satisfy at least one of the three subdivisions of Rule 23(b).

*Select Comfort*, 202 F.R.D. at 602; *see also Avritt v. Reliastar Life Ins. Co.,* 615 F.3d 1023, 1029 (8th Cir. 2010).   "The party seeking class certification bears the burden of establishing that it has satisfied each of Rule 23's class certification requirements."  *In re GenesisIntermedia, Inc. Sec. Litig.*, No. 03-3471 (RHK/AJB), 232 F.R.D. 321, 328 (D. Minn. Dec. 5, 2005) (*GenesisIntermedia*).

### B.  Rule 23(a) Requirements

#### 1.  Numerosity

The numerosity requirement is met when the class is large enough that "joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).

> Courts have typically established no arbitrary or rigid rules regarding the required size of a class, and what constitutes impracticality depends upon the facts of each case.  Factors relevant in assessing the impracticality of joining all class members include the number and geographical dispersion of persons in the class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the impracticability of joining the class members.

*Select Comfort*, 202 F.R.D. at 603 (citation omitted).   "In general, a putative class exceeding 40 members is sufficiently large to make joinder impracticable."  *Alberts v. Nash Finch Co.*, No. 05-887 (PJS/JJG), 245 F.R.D. 399, 409 (D. Minn. Feb. 15, 2007). Here, the proposed class includes 130 individuals.  (*See* Docket No. 31-1 at 38-42.)

Moreover, Plaintiffs' aggregate damages for their MFLSA tip-pooling claims are estimated at $100,812.  (Docket No. 30 at 5.)  Assuming for purposes of this analysis that each of the Class Members were entitled to an equal share of the *alleged* damages, each Class Member's tip-pooling claims would be worth approximately $775.  The number of the putative Class Members combined with the relatively small individual recovery persuades this Court that joinder would be impracticable and, therefore, the Court concludes that the numerosity requirement is satisfied.

### 2. Commonality

In order to satisfy the commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

> [T]he commonality requirement is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation even though the individuals may not be identically situated. Factual variances among class grievances will not defeat the commonality requirement so long as the claims arise from a common nucleus of operative facts.

*Select Comfort*, 202 F.R.D. at 603 (citation omitted). "Because commonality requires only one common question of law or fact, courts often find the requirement to be satisfied." *GenesisIntermedia*, 232 F.R.D. at 328.

Here, there are numerous common questions of law and fact because the class members' claims all derive from the same legal theories:

> (1) any money a server contributed to the tip pool during the class period was involuntary and therefore, unlawful; (2) regardless of whether tip pooling was mandatory, Defendants, by running the tip pool, unlawfully participated in the decision or agreement to pool tips; (3) no servers were paid cash wages for mandatory meetings and, therefore, were deprived minimum wage; and (4) no servers were reimbursed for mandatory uniforms, thereby causing their wages to drop below zero.

(Docket No. 30 at 15.) Common questions of fact include whether class members were required to contribute to the tip pool, how the tip pool was distributed, whether class members were required to attend meetings; whether class members were paid for their attendance at meetings; and whether Defendants reimbursed class members for the cost

of their uniforms.  Common questions of law include whether Defendants' role in the tip-pooling process constitutes "participation" under Minn. Stat. §177.24, subd. 3; whether coupons to Defendants' restaurant can suffice as wages; and whether Defendants were required to reimburse the class members for the cost of their uniforms.  Accordingly, the Court concludes that the commonality requirement is satisfied.

### 3.  Typicality

Typicality is present when "the claims or defenses of the representative parties are typical of the claims or defense of the class," Fed. R. Civ. P. 23(a)(3), and "is satisfied when the claims of the named plaintiffs emanate from the same event or are based on the same legal theory as the claims of the class members," *GenesisIntermedia*, 232 F.R.D. at 329.  Like commonality, typicality is not a high burden and "a finding of one generally compels a finding of the other." *Select Comfort*, 202 F.R.D. at 604 (quotation omitted).

Named Plaintiffs Fearn and Hemker are both former servers at Defendants' restaurant. (Docket No. 1, ¶¶ 1, 3.)  In connection with their employment as servers, they received tips from customers visiting the restaurant. (*See* Docket No. 1, ¶¶ 23-25.)  As servers, they were subject to Defendants' employment policies regarding its servers, which included (1) tracking each server's sales per shift through Defendants' point-of-sale system; (2) requiring each server to print out a receipt at the end of his or her shift, detailing the server's sales for that shift; and (3) applying a uniform, three-percent formula "to the server's total sales and requir[ing] the server to contribute [that amount] from [his or] her tips to [a] tip pool" that was then distributed by Defendants to

employees who worked as "greeters." (*See* Docket No. 1, ¶¶ 36-27, 36, 40, 49.) Similarly, Plaintiffs Fearn and Hemker each had to purchase a uniform to wear while serving, which consisted, in part, of a shirt, badge, and non-slip shoes. (Docket No. 1, ¶¶ 52-53.) Plaintiffs Fearn and Hemker were not reimbursed for these expenses, which caused their hourly wages to fall below federal and state minimum-wage requirements. (Docket No. 1, ¶¶ 54-55.) Further, as servers, Plaintiffs Fearn and Hemker were required to attend periodic meetings for which they received food vouchers to be used at Defendants' restaurant rather than their hourly wages. (Docket No. 1, ¶¶ 56-57.)

As the putative class is composed of current and former servers, Plaintiffs Fearn and Hemker have the same interest as the Class Members, their claims are typical of the Class Members, and "[i]f these practices should be found lawful or unlawful, [Plaintiffs Fearn and Hemker's] claims will be affected in the exact same way as those of the other servers." (Docket No. 30 at 17.) Therefore, the Court concludes Plaintiffs have satisfied the typicality requirement. *See Select Comfort*, 202 F.R.D. at 608 (concluding typicality requirement was met when named plaintiff "possesses the same interest and suffered the same injury as the other class members").

### 4.  Adequate Representation

Finally, the representative parties need to be in a position to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

> To meet this requirement, plaintiffs must show that (1) the class representative and her attorneys are able and willing to litigate the action competently and vigorously, and (2) the class representative's interests are sufficiently similar to those

11

> of the rest of the class members that her goals and viewpoints
> will not diverge from those of the class.

*Alberts*, 245 F.R.D. at 411.

First, Plaintiffs' counsel—the law firm of Nichols Kaster, PLLP, and specifically its attorneys Steven Andrew Smith and Anna P. Prakash—have previously been approved in this District as class counsel. *See Cosgrove v. OS Restaurant Servs., Inc.*, No. 10-1937 (SRN/SER) (D. Minn. May 3, 2011) (order granting preliminary approval of class-action settlement, including appointment of class counsel). Second, the combined experience of Plaintiffs' counsel as well as the fact that employment law, particularly the representation of employees, forms a large part of both the firm and counsel's practice persuades this Court that the law firm of Nichols Kaster, PLLP, and its attorneys Steven Andrew Smith and Anna P. Prakash will more than adequately protect the interests of the Class Members. (*See* Docket No. 32.)

"While generally speaking, consideration of the adequacy requirement tends to focus primarily on the competence and experience of class counsel, Rule 23(a)(4) does warrant some inquiry into the personal characteristics of the proposed representatives as well." *GenesisIntermedia*, 232 F.R.D. at 330. Plaintiffs Fearn and Hemker have participated in the drafting of the Complaint as well as the discovery process. (*See* Docket No. 30 at 18.) Moreover, the Court had an opportunity to witness the commitment of Plaintiffs Fearn and Hemker during the settlement conference. (*See* Docket No. 21.) Accordingly, the Court concludes that the adequacy requirement is met under Fed. R. Civ. P. 23(a)(4).

12

## C.  Rule 23(b) Requirements

"In addition to meeting the prerequisites  of Rule 23(a), an action must also satisfy at least one of the three subdivisions of Rule 23(b)."  *Select Comfort*, 202 F.R.D. at 609; *see* Fed. R. Civ. P. 23(b).  Plaintiffs assert that they have satisfied subdivision (3), which permits a district court to certify a class action if "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *see Avritt*, 615 F.3d at 1029.

### 1.  Predominance

The predominance requirement focuses on "whether the defendant's liability to all plaintiffs may be established with common evidence."  *Avritt*, 615 F.3d at 1029.  "There are no bright line rules to determine whether common questions predominate."  *Select Comfort*, 202 F.R.D. at 610.  The district court must evaluate the facts of each case and determine whether "there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position."  *Id.* (quotation omitted).  Where generalized evidence exists to prove or disprove an element on a simultaneous, class-wide basis, the predominance requirement is met.  *GenesisIntermedia*, 232 F.R.D. at 332. Further, the fact that there may be individual differences in the amount of the class members' damages will not defeat predominance.  *Select Comfort*, 202 F.R.D. at 610.

Here, the predominance requirement is satisfied because the evidence concerning the existence and substance of the alleged policies will be used to establish a common course of conduct engaged in by Defendants with respect to their servers as a whole. *Id.* at 611 (predominance requirement among stockholders met when "alleged fraudulent representations that generated sales of the common stock constitute a common course of conduct").

### 2.  Superiority of Class Treatment

Finally, the class action must also be the superior method of adjudicating the individual members' claims.  Fed. R. Civ. P. 23(b)(3).

> This requirement is satisfied only after the court has examined and weighed the following four factors: (1) the interest of members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.

*Select Comfort*, 202 F.R.D. at 611 (citing Fed. R. Civ. P. 23(b)(3)).

The economic feasibility of class litigation is particularly persuasive in this case. As stated in the parties' joint motion, "if Plaintiffs' theory would be proven correct, the theory will apply class-wide, making it uneconomical and inefficient for the class members to pursue claims individually in more than 100 individual lawsuits."  (Docket No. 30 at 20.)  And, as previously noted, the individual members' recovery is likely to be less than $1,000.  *See Alberts*, 245 F.R.D. at 412 (concluding class treatment is superior

where each member's claim is likely to be small but resolution of common question requires extensive evidence from many members); *Select Comfort*, 202 F.R.D. at 611 (approving class treatment where individual members' claims were too small to warrant individual lawsuits).

In addition, there is no indication that individual Class Members intend to pursue their claims separately.  In fact, the record indicates that seven individuals have already consented to join this litigation.  (*See* Docket Nos. 4, 6, 14, 17, 22-23.)  Moreover, the Court is not aware of any other pending litigation.  There are also no apparent management or notification difficulties regarding the putative class and Plaintiffs' counsel is well-versed in this area.  Finally, given the fact that Defendants' restaurant is located in this District and the alleged conduct occurred in this District, this District is the most appropriate forum for resolution of the claims at issue.  Accordingly, the Court concludes that Rule 23(b)(3)'s superiority requirement has been satisfied.

Having found that the requirements of Rule 23(a) and (b)(3) are satisfied in the present case, the Court recommends that the parties' joint motion be granted with respect to the proposed Rule 23 class.

## III.

### A.  The FLSA Collective Action

"Employees may bring suit under the FLSA on their own behalf and on behalf of all those who are 'similarly situated.'"  *Nerland v. Caribou Coffee Co., Inc.*, No. 05-1847 (PJS/JJG), 564 F. Supp.2d 1010, 1014 (D. Minn. May 17, 2007); *see* 29 U.S.C. § 216(b).

Although an individual employee may bring a suit on behalf of herself and other similarly situated employees, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b).  "This is known as the 'opt-in' process."  *Simmons v. Valspar Corp.*, No. 10-3026 (RHK/SER), 2011 WL 1363988, at *2 (D. Minn. Apr. 11, 2011).  In this regard, an FLSA collective action "is unlike the class action procedure under Federal Civil Rule of Procedure 23 where parties are automatically included in the class unless they 'opt out.'"  *Nerland*, 564 F. Supp.2d at 1017.

"The fundamental inquiry in determining whether a collective action is appropriate under § 216(b) is whether [the] plaintiffs are similarly situated."  *Simmons*, 2011 WL 1363988, at *2.  This District has employed a two-stage process to answer this question.  The first, or "notice" stage, involves conditional certification and "the Court determines whether notice of the action should be given to putative collective action members."  *Nerland*, 564 F. Supp.2d at 1017.  The plaintiffs bear the burden of showing that they are similarly situated and "need only establish a colorable basis for their claim that the putative [collective action] members were victims of a single decision, policy, or plan."  *Simmons*, 2011 WL 1363988, at *3 (quotation omitted).  This is not a high burden.  *See Nerland*, 564 F. Supp.2d at 1017 (noting conditional certification is "a fairly lenient standard"); *Simmons*, 2011 WL 1363988, at *3 (stating burden at first stage is "not onerous" (quotation omitted)).  "The second stage occurs after discovery, usually when

16

the defendant moves to decertify the class.  At that stage, the Court applies a stricter standard and makes a factual determination whether the plaintiffs are indeed similarly situated based on more complete evidence." *Simmons*, 2011 WL 1363988, at *3 (citation omitted).

### B.  Conditional Certification of the FLSA Collective

Plaintiffs are presently at the first stage, seeking conditional certification; as part of the settlement agreement, Defendants do not oppose conditional certification.  (*See* Docket No. 30 at 8, 20-23.)   As evident in this Court's prior discussion of the commonality, typicality, and predominance requirements of Rule 23, Plaintiffs assert that they, along with the other putative collective-action members share a "common experience[]."  (Docket No. 30 at 23.)   Plaintiffs and the members of this putative collective action all are or were servers at Defendants' restaurant.  The policies at issue were applied to all servers.  Further, while the collective-action members may have experienced different degrees of harm, e.g., contributed different aggregate amounts to the tip pool throughout the course of their employment, they all experienced the same type of harm.  Accordingly, Plaintiffs have established that they are similarly situated and the Court therefore recommends that the parties' joint motion for conditional certification under the FLSA be granted.

## IV.

### A. Judicial Approval of Settlement

Settlements reached in class-action litigation require approval of the district court. Fed. R. Civ. P. 23(e).  "Under Federal Rule of Civil Procedure 23(e), the district court acts as a fiduciary, serving as a guardian of the rights of absent class members."  *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005) (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)) (*Wireless*).  "[I]n acting to protect the interests of the class when reviewing a settlement, the Court cannot rewrite or modify the terms of the agreement.  The Settlement must be approved or disapproved as a whole."  *Welsch v. Gardebring*, No. 4-72-751 (DSD), 667 F. Supp. 1284, 1289-90 (D. Minn. Aug. 26, 1987) (citation omitted).

"Under Rule 23(e), class actions may only be settled if a court determines the settlement is 'fair, reasonable, and adequate.'"  *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 09-1691 (JMR/FLN), 643 F. Supp.2d 1094, 1099 (D. Minn. Aug. 11, 2009) (*UnitedHealth*).

> A district court is required to consider four factors in determining whether a settlement is fair, reasonable, and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement.

*Wireless*, 396 F.3d at 932.  "The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'"  *Id.* at 933 (quoting *Petrovic*,

200 F.3d at 1150).  Where the case has not run the full course of litigation, the Court's evaluation of the parties' strengths and weaknesses is based on approximation.  *Welsch*, 667 F. Supp. at 1290.

### B. Proposed Settlement

Here, the proposed settlement was reached after the parties participated in a court-ordered settlement conference.  (*See* Docket No. 21.)  At the time of the conference, discovery had identified the putative Class Members and disclosed the amount each individual had contributed to the tip pool at issue.  (*See* Docket No. 30 at 24-45.)  These MFLSA claims encompass $100,812—roughly 90%—of the approximate $112,677 in unliquidated damages sought by Plaintiffs.  (*See* Docket No. 31, ¶ 3.)  As a result, the parties had sufficient evidence before them by which to examine their respective positions; Plaintiffs could approximate the size of the putative class/collective and amount of recovery while Defendants could estimate their potential exposure.

In addition, the factors for determining the fairness, reasonableness, and adequacy of a settlement support preliminary approval in this case.  The Court is required to "balance[] the risks and benefits of continued litigation against the benefits of an immediate and certain recovery."  *UnitedHealth*, 643 F. Supp.2d at 1099.  As the parties point out, even if Plaintiffs were to establish liability with respect to the MFLSA claims arising out of the tip-pool policy, "Defendants contend that they would be entitled to an offset against amounts Plaintiffs received through the tip pool, further lowering damages."  (Docket No. 30 at 29.)  Defendants' financial situation is also significant.

19

Defendants' "restaurant is burdened by substantial construction and franchisor debts and, over the past two years, . . . has lost a significant amount of money." (Docket No. 30 at 30.) Given the inherent uncertainties of litigation balanced against Defendants' delicate financial position, the Court finds the parties' settlement to be fair, reasonable, and adequate and recommends that the settlement be preliminary approved subject to a final determination following a hearing after notice to the Class Members.

### C. Notice to Class Members

As previously indicated, the Court ordered the parties to submit a revised notice of settlement. Having reviewed the revised notice, the Court finds that (1) this Notice of Settlement (Docket No. 38) adequately informs Class Members of their rights and choices in this litigation, and (2) delivery by First-Class mail to the most current mailing address information available for each Class Member meets Rule 23(e)(1)'s requirement of reasonable notice. *See* Fed. R. Civ. P. 23(e)(1); *Petrovic*, 200 F.3d at 1153 (8th Cir. 1999). Therefore, the Court recommends approval of the Notice of Settlement as to form and content.

### V.

Based on the files, records, and arguments of counsel, the Court **HEREBY RECOMMENDS** that:

1.   The parties' Joint Motion for Preliminary Settlement Approval (Docket No. 29) be **GRANTED**;

2.   The proposed Rule 23 class and FLSA collective as defined in the Joint Motion be **CERTIFIED** for settlement purposes;

3.     Plaintiffs' Counsel be **APPOINTED** as Class Counsel and Settlement Administrator;

4.     Named Plaintiffs, David Fearn and Christina Hemker, be **APPOINTED** as Class Representatives;

5.     The Notice of Settlement (Docket No. 38) be **APPROVED** for distribution; and

6.     A final settlement approval hearing be **SCHEDULED**.


Date: January __30__, 2012                       _____*s/ Tony N. Leung*_____
                                                 Tony N. Leung
                                                 United States Magistrate Judge
                                                 for the District of Minnesota


                                                 *Fearn et al. v. Blazin' Beir Ranch, Inc. d/b/a Whiskey*
                                                 *Creek Wood Fire Grill et al.*
                                                 File No. 11-cv-743 (DSD/TNL)


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before **February 14, 2012**.

21